U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

JUN 2 1 2007

ROBERT H. SHEMWELL, CLERK
BY _____
           DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| UNIVERSITY REHABILITATION HOSPITAL, INC., ET AL. | CIVIL ACTION NO. 05-1827 |
| versus | JUDGE TRIMBLE |
| INTERNATIONAL COOPERATIVE CONSULTANTS, INC., ET AL. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a motion for summary judgment [Doc. # 56] filed by defendant insurer, St. Paul Reinsurance Company, Ltd. ("St. Paul"), in which it seeks judgment that certain insurance policies issued by it to defendant International Cooperative Consultants, Inc. ("ICC") do not provide coverage for claims against ICC by plaintiff University Rehabilitation Hospital, Inc. ("University"). A responsive brief [Doc. # 75] was filed in opposition by University, but no such filing was made on behalf of ICC. St. Paul also submitted a reply to plaintiff's memorandum in opposition [Doc. # 85]. For the reasons expressed herein, this court finds that St. Paul's motion should be GRANTED and, accordingly, all claims against it in this matter should be DISMISSED with prejudice.

I.  Background

   A.  Relevant Facts

St. Paul issued two claims-made insurance policies benefitting ICC. These policies

1

created coverage periods spanning August 17, 2000 - August 17, 2001 and October 5, 2001 - October 5, 2002[1]. Each policy carried a retroactive date of August 17, 2000[2].

The instant suit was filed on October 14, 2005 by University who served a copy of the original complaint on St. Paul in November of the same year. University was granted leave to amend its complaint and did so on August 25, 2006, adding St. Paul as a named defendant to this suit.

St. Paul now comes before the court seeking summary judgment as to its coverage liability for alleged wrongful acts by its former insured, ICC.

### B.     Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, indicate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 - 50 (1986); Am. Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson at 248. In making this determination, a court must draw all justifiable inferences in favor of the non-moving party. Id at 255. Once the moving party has shown "that there is an absence of evidence to support the non-moving party's case," the non-moving party must come forward with specific facts showing a genuine factual issue for trial. Celotex Corp.

---

[1] See Exhibits "A" and "B" to Doc. # 55.

[2] See "Declarations" page of Exhibits "A" and "B".

v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); FED. R. CIV. P. 56(C). "Conclusory denials, improbable references, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for trial. SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993). The movant "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the non-movant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting Celotex, 477 U.S. at 323). If the movant fails to meet this initial burden, the motion must be denied, regardless of the non-movant's response. Id.

**II.   Analysis of Law and Arguments**

The policies at issue in this case provide coverage for claims which become known and are reported to the insurer within the applicable coverage periods[3]. This is in keeping with the nature of claims-made policies and does not constitute a contract against public policy in Louisiana. Anderson v. Ichinose, 760 So.2d 302 (La. 9/8/99).

The court concurs with St. Paul's assessment as to conflicts of law in this case and finds that, although these policies were issued in Florida to ICC, a Florida business, no true conflict exists. Florida, like Louisiana, recognizes claims made policies as valid contracts of insurance. Gulf Ins. Co. v. Dolan, Fertig and Curtis, 433 So.2d 512 (Fla. 1983).

We find that the language of these claims made policies is unambiguous and produces no absurd result and, therefore, our role is to apply the law between the parties as written. LA. CIV. C. ARTS. 2045, 2046. The language of the policies at issue provides that coverage may be

---

[3] See Exhibits A and B to Doc. # 56 at pp. 1 ("Coverage") and 4 ("Insured's Duties in the Event of a Claim").

triggered by two different mechanisms: (1) notice to St. Paul that a claim has been made against ICC during the coverage period or, alternatively, on or after the retroactive date; or (2) notice to St. Paul by its insured, ICC, that it has committed an error or omission which may give rise to a future claim[4].

St. Paul moves for summary judgment on the basis that no coverage was triggered under either of the above theories. First, the insurer asserts, no claim was made against ICC within the applicable coverage periods, which, St. Paul says, ended in 2002. University disputes a portion of this argument, submitting testimony by Langfred W. White[5] which, it suggests, creates a genuine issue of material fact as to whether or not ICC purchased extended reporting on the St. Paul policies. The pertinent part of Mr. White's testimony[6] expresses a belief, on his part, that

---

[4] See Exhibits A and B to Doc. # 55 at pp. 1, 4.

[5] Mr. White is the designated corporate representative for both ICC and ICC Business Credit, Inc. Doc. # 75 at p. 1.

[6] "Q:   –would you have any reason to believe that, in any way, that ICC paid to extend the policy beyond October 5th, 2002, which is when the policy reflects that its period ended?

A:   Yes. I'm relatively sure that that policy was extended probably twice more. We continued to pay premiums.

Q:   To St. Paul? To St. Paul or a different insurer?

A:   ...we continued to pay premiums for ICC through sometime in 2004, and maybe 2005, because that provided coverage for ICC, ICC Health Management...

Q:   You said you don't remember when the premiums ceased being paid. I mean would they have been – do you know generally?...

A:   I doubt it was as late as 2006...we kept it around for at least a year or so, until the Statute ran on negligence claims, and we kept it around for a little while after that, because we were managing other entities besides PHNO; and at some point or

4

ICC did, in fact, purchase extended reporting for its St. Paul policies which extended the reporting period until, perhaps, 2005.

University also asks the court to delay ruling on St. Paul's motion until such time as we rule on its more recent Motion for Partial Summary Judgment [Doc. # 78] in which it seeks an accounting. University avers that the accounting, if granted by summary judgment, may uncover expenditures for extended reporting premiums. We find that such a delay is not warranted in this case.

University does not dispute that St. Paul's first notice of the claim against ICC, its insured, was received in October of 2006. As we have previously stated, ICC did not file an opposition to St. Paul's motion, thereby expressing no objection to this assertion.

We have been presented with no evidence that St. Paul was given requisite notice of any claim against ICC during any real or theoretical reporting period. Although we acknowledge the testimony of Mr. White and its bearing on the issues presented here, we find that the possibility of coverage under these claims made and reported policies is wholly foreclosed by the facts established by the record. The conclusory testimony of Mr. White, unsupported by any evidence, does not create an issue of fact in this case[7] and, therefore, St. Paul is entitled to summary judgment as to coverage in this case.

---

    another, it just wasn't worth spending the money anymore...

Q:    Okay. How difficult would it be to find that out?

A:    Ask Cindy. It's easy enough to do. I'll ask Cindy."

Deposition of Langfred W. White at pp. 65-67, attached as Exhibit 1 to Doc. # 75.

[7] FED. R. CIV. PRO. 56(C).

### III. CONCLUSION

This court finds, based upon the summary judgment evidence before it, that the claims made and reported policies issued by St. Paul to ICC do not provide coverage for any alleged wrongs committed by ICC which form the basis of this suit. Based upon the evidence presented, we find that ICC did not present a claim within the requirements of the policies during any possible coverage period, whether ending in 2002 or, arguendo, 2005. As such, summary judgment shall be rendered in favor of the movant, St. Paul and all claims brought against it in this suit shall be dismissed with prejudice.

**THUS DONE AND SIGNED** in chambers at Alexandria, Louisiana this 21st day of June, 2007.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE