U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

AUG 0 8 2007

ROBERT H. SHEMWELL, CLERK
BY _____
DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

| | |
|---|---|
| **UNIVERSITY REHABILITATION HOSPITAL, INC., ET AL** | **CIVIL ACTION NO.05-1827** |
| **-vs-** | **JUDGE TRIMBLE** |
| **INTERNATIONAL COOPERATIVE CONSULTANTS, INC., ET AL** | **MAGISTRATE JUDGE KIRK** |

### MEMORANDUM RULING

Before the court is a motion for partial summary judgment [R. 78] and a motion to strike [R. 97] filed by plaintiffs University Rehabilitation Hospital, Inc., d/b/a Physicians Hospital of New Orleans ("PHNO"), Robert A. Rayford and Betty Ann Olds Rayford ("Rayfords"), and Steven P. Mansour ("Mansour"). Defendants International Cooperative Consultants, Inc. ("ICC"), ICC Business Credit, Inc. ("IBC") and William Planes ("Planes") filed timely responses to both motions. Considering the law and arguments advanced by the parties and for the reasons stated herein, the court finds that plaintiffs' motions should both be DENIED.

## I.    Background

### A.    Relevant Facts

PHNO was a long-term acute care facility located in New Orleans, Louisiana[1].

---

[1]Plaintiffs' memorandum in support of motion [R. 78] at p. 1.

PHNO entered into a "Management Services Agreement[2]" ("Agreement") with ICC on September 27, 1999 wherein PHNO contracted for ICC to perform certain management services on its behalf.  The parties amended the agreement on February 11, 2000, increasing the monthly compensation due to ICC and retaining the services of ICC as a hospital administrator[3]. A second amendment to the agreement was executed on July 9, 2001 wherein the parties agreed that, upon written notice to PHNO, ICC could assign its rights under the agreement to a wholly-owned subsidiary[4].  This second amendment also revoked authority of PHNO to terminate the agreement without cause, and further provided that the agreement could only be terminated because of the death or infirmity of Planes or the sale of the hospital[5].

On April 1, 2001, PHNO signed a promissory note in favor of IBC in return for a revolving line of credit in the amount of $800,000[6].  This line of credit was increased by $1,200,000 on July 9, 2001, when PHNO signed a second promissory note in favor of IBC[7], raising the total credit available to PHNO to $2,000,000.   In our previous ruling, addressing defendants' motion for summary judgment on the issue of corporate veil piercing [R. 115],

---

[2]Id at "Exhibit 1."

[3]Id at "Exhibit 2."

[4]Id at "Exhibit 3."

[5]Id.

[6]Id at "Exhibit 4."

[7]Id at "Exhibit 7."

we stated that these five (5) documents comprised the business relationship between the parties. Defendants' memorandum in opposition to plaintiffs' instant motion calls our attention to one additional agreement executed between the parties, an "Account Sweep Agreement" ("Sweep Agreement") dated April 30, 2001[8].

This suit was filed by plaintiffs on October 14, 2005[9]. Having carefully outlined the procedural history of this case in our prior rulings, we decline to do so here. Plaintiffs' instant motion seeks summary judgment on the issues of accounting, acceleration and collection of management fees and collection of reserves. Plaintiffs' motion to strike asks this court to strike many of the statements contained in the affidavit of Planes, attached as "Exhibit 1" to defendants' memorandum in opposition to plaintiffs' motion. We address these motions below.

B.      *Applicable Standard*

Plaintiffs' first motion before the court requests partial summary judgment pursuant to Fed. R. Civ. P. Art. 56. In ruling on such a motion, we must determine whether the "....pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact..."[10] A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a

---

[8] "Exhibit 1(B)" to defendants' memorandum in opposition [R. 88].

[9] First Amended Complaint [R. 34] at ¶¶ 42-48.

[10] Fed. R. Civ. P. Art. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); American Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004).

verdict for the non-moving party[11]. In making this determination, the court must draw all justifiable inferences in favor of the non-moving party[12].

Once the moving party has carried its burden of showing an absence of evidence to the non-moving party's case, the burden shifts to the non-moving party to come forward with specific facts showing a genuine factual issue for trial[13]. "Conclusory denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that a genuine issue of material fact remains to be tried[14]. Evidence presented, whether in support of or in opposition to a motion for summary judgment, must be of such character that it would be admissible at trial[15].

If the moving party fails to meet its initial burden of proof, the motion must be denied, regardless of the non-moving party's response[16].

## II.     Analysis of Law and Argument

### A.     Plaintiffs' motion to strike the affidavit of Planes

Plaintiffs filed a motion to strike the affidavit of Planes [R. 97], which was submitted by defendants as summary judgment evidence in opposition to plaintiffs' motion. Plaintiffs'

---

[11]Anderson, 477 U.S. 242 at 248.

[12]Id at 255.

[13]Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[14]SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).

[15]Fed. R. Civ. P. Art. 43(a); Roucher v. Traders & General Ins. Co., 235 F.2d 423, 424 (1956).

[16]Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex).

motion to strike alleges that many of the statements made by defendant Planes in his affidavit of June 26, 2007 should be stricken by the court on the basis that these statements are inadmissible in evidence as hearsay and are irrelevant. Further, plaintiffs allege that many of Planes' statements constitute legal conclusions and not facts. Lastly, plaintiffs allege that all of the exhibits attached to Planes' affidavit are irrelevant and unauthenticated.

Defendants refute these arguments, pointing out that Planes, as the former CEO of both ICC and IBC is well-qualified to attest to the facts presented in his affidavit. Defendants also reject the argument that the exhibits attached to the affidavit are unauthenticated.

Affidavits submitted in conjunction with a motion for summary judgment are subject to the rules concerning admissibility of evidence at trial and should present facts which would be admissible under the applicable standard[17].

Having examined the Planes' affidavit, we find that, while certain statements made therein should be stricken because they are legal conclusions rather than recitations of fact or hearsay, such statements were not considered in addressing plaintiffs' instant motion. The court has taken notice of only those relevant statements which pertain to matters before the court in conjunction with plaintiffs' motion. Moreover, we have relied only on statements by Planes which concern matters as to which he may reasonably said to have personal knowledge by virtue of his former position of employment with both defendant corporations.

---

[17]Fed. R. Civ. P. 56(e).

Accordingly, plaintiffs' motion to strike will be denied.

### B.        Plaintiffs' renewed demand for an accounting

Plaintiffs' motion for partial summary judgment first seeks judgment in their favor

on the issue of an accounting.  We previously ruled that a relationship of mandate exists

between PHNO and ICC and IBC by virtue of the agreement, promissory notes and security

agreement between them[18].  These contracts evidence that PHNO, the principal, conferred

authority on ICC and, later, IBC, to "transact one or more affairs" on its behalf[19].

Accordingly, under applicable Louisiana law[20], PHNO is entitled to an accounting from its

mandataries, ICC and IBC.

Plaintiffs assert that, while certain client ledger sheets and bank statements have been

produced, no true and full accounting of PHNO funds has been rendered by defendants[21].

Defendants suggest, first, that an accounting has already been rendered, alleging that

plaintiffs' expert witness, William Theron (Ron) Roberts, Jr., CPA ("Roberts") used this

previously provided accounting to arrive at the conclusions contained within his report[22].

Defendants also claim that any request for an accounting is premature since the issue of

federal tax liability for unpaid trust fund taxes is still outstanding.  Plaintiffs respond by

---

[18]Memorandum ruling of the court [R. 41].

[19]La. Civ. Code Art. 2989.

[20]See La. Civ. Code Art. 3003.

[21]Plaintiffs' reply memorandum [R. 99] at p. 2.

[22]"Exhibit 12" to plaintiffs' memorandum in support of motion [R. 78].

pointing out that the information provided to Roberts is incomplete and, in fact, was produced pursuant to a subpoena and is not an "accounting." Further, plaintiffs reject the accounting of reserves being held, attached as "Exhibit 1(G)" to defendants' responsive brief, as unsubstantiated and incomplete.

There can be no doubt that defendants owe plaintiffs a full and detailed accounting by virtue of the relationship once enjoyed by these parties. The court's dilemma, however, results from the timing of plaintiffs' renewed request. The trial of this matter is set to commence on September 10, 2007 before the undersigned. Thus, time is of the essence.

The court finds that it is in the interests of both parties, as well as that of judicial efficiency, to proceed to trial using the general figures known to both parties. While, as plaintiffs point out, there are discrepancies between the parties as to the particular sums at issue in this case, defendants have admitted to possessing (or having possessed at one time) the two general types of payments which form the basis of the suit: accelerated management services fees and reserves. Under these circumstances, the court is prepared to adjudicate issues of contract rights and liability, preserving the particulars of the judgment amount for some later proceeding.

Acknowledging the accounting debt still owed by defendants, the court shall reserve unto plaintiffs the right to demand such an accounting at a future date, particularly after a judgment has been rendered in this case, should plaintiffs desire it.

C.   *Waiver of affirmative defenses*

Defendants argue that the disputed sums were properly assessed against PHNO as a

function of the security agreement between them.  This argument, as it applies to both disputed amounts, will be addressed below.  We first address plaintiffs' assertions that this affirmative contract rights defense was waived by defendants because it was not asserted in their answer to plaintiffs' original or amended complaint.

Federal Rule of Civil Procedure 8(c) provides that defendants "shall set forth affirmatively accord and satisfaction...waiver, and any other matter constituting an avoidance or affirmative defense."  Affirmative defenses not pled in a defendant's answer or, in some cases, motion for summary judgment, are deemed waived[23].  There are, however, exceptions to this rule.

In <u>McConathy v. Dr. Pepper</u>[24], the United States Court of Appeals for the Fifth Circuit held that technical failure to satisfy Fed. R. Civ. P. 8(c) is not automatically "fatal" to a defense.  Further, in <u>PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.</u>[25], the Fifth Circuit ruled to preserve defendant's affirmative defenses based on certain contract provisions.  Recalling similar prior rulings, the court found that, due to the fact that plaintiff's claims and defendant's defenses all concerned rights under a contract between the parties, defendant's affirmative defense concerning a particular portion of the contract did not create undue prejudice or unfair surprise such that the court should

---

[23]Fed. R. Civ. P. 8(c); <u>PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.</u>, 177 F.3d 351, 363 (5th Cir. 1999).

[24]131 F.3d 558, 562 (5th Cir. 1998).

[25]177 F.3d 351, 363 (5th Cir. 1999).

8

deem the defense waived[26].

The court has reviewed the complaints and answers filed in this matter and finds that this suit necessarily involves the rights of both parties under the contracts existing between them. Plaintiffs' claims for recovery are based on what it alleges is an absence of contractual authority to take and retain such funds. Defendants' defenses, therefore, assert rights under the contracts. Under these circumstances, we find that plaintiff is not unduly burdened or unjustly surprised by the affirmative defense now advanced by defendants. Accordingly, we will not deem this contract right defense waived. While we are aware of plaintiffs' dismay over defendants' only recent admission that funds at issue are, indeed, being held by ICC and IBC, we feel that this issue is adequately addressed by our finding as to defendants' duty to provide a full and thorough accounting.

D.     *Failure of cause*

Plaintiffs contend that, under applicable Louisiana law[27], the rights and obligations incurred by defendants in the management services agreement became extinguished when PHNO closed its doors in 2002 because ICC could no longer perform management and administrative services for a hospital which no longer existed[28]. Thus, say plaintiffs, the

---

[26]Id.

[27]Having reviewed the agreement, amendments, security agreement, promissory notes and sweep agreement, the court agrees with the parties that these instruments should be governed, as designated therein, by applicable Louisiana law.

[28]Plaintiffs' memorandum in support of motion [R. 78] at pp. 16-18.

9

"lawful cause" of the obligation was destroyed due to a "fortuitous event"[29].

Defendants argue that the closing of the hospital was not a "fortuitous event" as this term is interpreted by the courts[30]. Moreover, defendants assert that the closing of the hospital was clearly anticipated by the amendments to the agreement removing PHNO's authority to terminate the contract without cause[31].

The Louisiana Civil Code defines "fortuitous event" as "one that, at the time the contact was made, could not have been reasonably foreseen[32]." Defendants draw the court's attention to the affidavit of Planes as it pertains to this matter. Notably, Planes attests that ICC and IBC were aware for some time that PHNO contemplated closing its doors due to serious financial problems[33]. Defendants also assert that the amendments to the original agreement were made in contemplation of the eventuality of the hospital closing, as reflected in the removal of the authority of PHNO to terminate the contract except under specific conditions[34]. Moreover, defendants argue that an affiliate of ICC offered to purchase PHNO, along with its outstanding tax debts, but that offer was rejected[35]. Defendants assert that they advised PHNO that shutting its doors meant forgoing substantial funds due the hospital from

---

[29]La. Civ. C. Arts. 1966-67, 1876.

[30]Defendants' memorandum in opposition to motion [R. 88] at pp. 13-20.

[31]Id at pp. 17-18.

[32]La. Civ. C. Art. 1875.

[33]"Exhibit 1" to defendants' memorandum in opposition to motion [R. 88].

[34]Defendants' memorandum in opposition to motion [R. 88] at pp. 17-18.

[35]Id at pp. 2-3.

the federal government and that these funds were vital in satisfying outstanding debt[36].

Viewing the evidence before us in the light most favoring defendants, the non-moving party,

we find that defendants adequately pled facts which would, if accepted as true, clearly

indicate that the closure of PHNO was a contemplated event and, therefore, not a fortuitous

event sufficient to destroy the cause of the obligations at issue in this case.

Accordingly, we decline to grant summary judgment in favor of plaintiffs on the issue

of failure of cause.

E.      *Acceleration of Management Fees*

Plaintiffs assert that they are entitled to summary judgment declaring that defendant

ICC had no rights to assign the management fees contemplated in the original agreement to

IBC and, further, that IBC had no right to accelerate and collect $1.8 million in management

fees from PHNO[37].  Defendants rebut this argument by asserting the previously discussed

affirmative defense that the acceleration, assignment and collection of the management fee

was proper under the terms of the original agreement and security agreement[38].

Plaintiffs do not provide any evidence, beyond the attack on the affirmative defense

offered by defendants, demonstrating that the acceleration, assignment and collection of the

management fees was improper under the agreement and security agreement executed

between the parties.  Finding as we have with respect to the affirmative defense offered by

---

[36]Id.

[37]Id at pp. 15-18.

[38]Defendants' memorandum in opposition to motion [R. 88] at pp. 6-12.

11

defendants, we must deny plaintiffs' motion for summary judgment on the issue of the management fees eventually collected by IBC, as plaintiffs have not carried their burden of proof in this motion.

       *F.*    *Retention of accounts receivable over and above the management fees*

     Plaintiffs contend that defendants are in possession of certain accounts receivable belonging to PHNO, over and above those funds ICC and IBC collected as accelerated management fees[39]. Defendants do not deny possessing these funds and assert that the language of the security agreement grants IBC the authority to retain accounts receivable belonging to PHNO in order to satisfy PHNO's debts[40].

     It is clear to the court, upon reviewing the security agreement, that IBC was authorized to hold reserves for "all or any liabilities of Debtor to Secured Party, whether or not they, any of them, be then due, and in such order of application as Secured Party may from time to time elect[41]." We find that, even if compensation theory were applicable in this case, the express language of the security agreement alters the law as between these parties. The security agreement contradicts the assertions of plaintiffs that no retention of reserves was contemplated between the parties. Plaintiffs have offered no evidence which tends to demonstrate that this language should be disregarded and, therefore, has not satisfied its proof burden in this motion. We decline, therefore to grant summary judgment in plaintiffs'

---

[39]Plaintiffs' memorandum in support of motion [R. 78] at pp. 18-21.

[40]Defendants' memorandum in opposition to motion [R. 88] at pp. 21-23.

[41]"Exhibit 5" to plaintiffs' memorandum in support of motion [R. 78] at Sec. 14(f).

favor on this issue.

**B.    Conclusion**

The court finds that the affidavit of Planes was not helpful in determining the issues contained in plaintiffs' motion and, therefore, will deny plaintiffs' motion to strike such affidavit as moot.

We also find that, while plaintiff is entitled to an accounting more thorough and descriptive than it has been previously provided, the discrepancies between the parties as to exact dollar amounts spent or held do not prevent the timely adjudication of the rights of these parties under the contracts between them.  As such, we shall proceed with the accounting that we have, though it is incomplete, expressly preserving unto plaintiff the right to seek the full accounting to which they are entitled after judgment is rendered, should they still desire it.

We reject plaintiffs' argument that the management services agreement executed by the parties was terminated due to failure of cause.  The evidence reflects that PHNO's decision to close its doors was, in fact, contemplated by the parties and, moreover, reflected in the amendments to the agreement.

We find that defendants' failure to specify the portions of the contracts upon which it asserts defenses in this case is non-prejudicial due to the fact that, from the start, this litigation has been centered on the various agreements and promissory notes executed by the parties.  We follow jurisprudence which characterizes these types of specified defenses as

13

exceptions to the general rule that affirmative defenses not asserted in the answer or first appearance by motion are deemed waived.  Defendants shall be allowed to maintain their stated contract defenses.

We find, lastly, that plaintiffs have not carried their burden on the issues of acceleration and collection of management fees and retention of reserves.  As such, we will deny plaintiffs' motion as to these issues.


Alexandria, Louisiana
August ___8___, 2007

JAMES T. TRIMBLE, JR.
U.S. DISTRICT JUDGE

14